IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOMINIC FLEMISTER,** | : | |
|     Petitioner | : | |
| | : | No. 1:23-cv-01689 |
|     v. | : | |
| | : | (Judge Kane) |
| **SUPERINTENDENT** | : | |
| **THOMAS MCGINLEY, et al.,** | : | |
|     Respondents | : | |

**MEMORANDUM**

Before the Court is a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 through which pro se Petitioner Dominic Flemister ("Flemister") challenges his 2015 convictions for attempted murder and carrying a firearm without a license in the Dauphin County Court of Common Pleas ("Court of Common Pleas"). The Court will deny the petition for writ of habeas corpus with prejudice.

**I.     BACKGROUND**

The state courts of Pennsylvania have succinctly summarized the relevant factual background of Flemister's conviction. Sometime during the night of April 24, 2014, or the early morning of April 25, 2014, a friend of Flemister's named James Hill ("Hill") observed Flemister get into an argument with the eventual victim, Rodney Dunbar ("Dunbar"), at a night club in Harrisburg, Pennsylvania. See Commonwealth v. Flemister, No. 1951 MDA 2015, 2016 WL 5920672, at *1 (Pa. Super. Ct. Sept. 8, 2016). Sometime later that night, Hill witnessed Flemister get out of a car near the intersection of 17th Street and Swatara Street in Harrisburg and continue the argument with Dunbar. See id. Hill was walking on 17th Street when he heard two gunshots. See id. He looked towards where Flemister and Dunbar had been arguing and observed Flemister get into his car and drive away. See id.

Hill walked several blocks to his cousin's house in the area, where he sat down on the porch. See id. Approximately 10–20 minutes later, Flemister came to the house and called out to Hill. See id. The two spoke in an alleyway on Swatara Street, at which point Flemister told Hill that Dunbar had tried to punch Flemister and that Flemister "had to do somethin' to him" or "somethin' had to be done to him." See id. Hill observed that Flemister had a gun with him while they spoke. See id. Hill did not contact the police after this conversation because he did not want to "rat [Flemister] out." See id. Hill subsequently spoke with the police after they contacted him through his girlfriend. See id.

Angel Diaz ("Diaz"), a Harrisburg police officer who was patrolling the area of the shooting, found Dunbar lying in the street after hearing a woman screaming. See id. Dunbar was bleeding profusely from his groin. See id. Diaz kept Dunbar awake until emergency medical technicians arrived and then rode with him in an ambulance to Hershey Medical Center. See id. During the ambulance ride, Dunbar told Diaz, "they tried to kill me." See id.

Brianna Chambers ("Chambers"), Dunbar's girlfriend, was on the porch of the home she shared with Dunbar on 17th Street on the night of the shooting. See id. She observed Flemister and another individual approach Dunbar. See id. She then watched as a fight broke out between Flemister and Dunbar approximately ten feet from the house. See id. She heard a gunshot, and when she realized that Dunbar had been shot, she started screaming and called 911. See id.

Police recovered a shell casing from a revolver from the scene of the shooting. See id. Dunbar sustained a gunshot wound that obliterated multiple femoral vessels. See id. at *2. He underwent multiple surgeries for artery repair and multiple blood transfusions. See id. Both Dunbar and Chambers identified Flemister as the person who shot Dunbar in photo arrays in the days after the shooting. See id.

2

Dunbar subsequently testified at Flemister's trial, but stated only that he had been shot, that he underwent multiple surgeries following the shooting, and that he remained hospitalized for approximately one month. See id. After the Commonwealth obtained leave of the trial court to question Dunbar as a hostile witness, the trial court directed Dunbar to either read the transcript of his prior statement to police that was made following the shooting or allow the prosecutor to read the transcript into evidence. See id. Dunbar agreed to read the transcript himself. See id. The transcript of the statement read as follows:

> We were all at the crib playing cards and music. So I left 2:00 (sic) to go to Forever Nights. So I seen him, seen Kool Aid at Forever Nights. We had some words. So after that I left. Walking to, walking to back to my house. So I seen Kool Aid come out, hop out, hop out of this black, black car. He came up to me talkin' about, oh yeah you wanna act tough now? You wanna act tough shit? I was, like, what's up, and that's when we start. We start tearin it. And then after that everything was done. He felt some type of way. He shot at me. And that's when I ran to the porch and laid down. And that's when my baby mom called the cops, called the ambulance.

See id. (alterations in original).

Flemister was arrested on May 20, 2014, and charged with attempted murder and related crimes. See id. at *3. Following a jury trial on August 19 and August 20, 2015, Flemister was convicted of attempted murder, aggravated assault, and carrying a firearm without a license. See id. at *1, 3. The Court of Common Pleas sentenced Flemister to 20–40 years of incarceration. See id. at *3.

Flemister appealed to the Pennsylvania Superior Court, asserting the following claims for relief: (1) the Commonwealth had not proven specific intent to kill; (2) the conviction for attempted murder was against the weight of the evidence; and (3) the conviction for aggravated assault was against the weight of the evidence. See id. The Superior Court affirmed the conviction and sentence on September 8, 2016. See id. at *5. Flemister filed a petition for

allowance of appeal to the Pennsylvania Supreme Court, which was denied on May 2, 2017.  See Commonwealth v. Flemister, 168 A.3d 1285 (Pa. 2017).

Flemister filed a petition for state collateral relief pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), asserting that his trial counsel provided ineffective assistance of counsel. See Commonwealth v. Flemister, 279 A.3d 1255 (Pa. Super. Ct. 2022).  The Court of Common Pleas dismissed the PCRA petition on June 17, 2021, and Flemister appealed.  See id. On appeal, the Superior Court remanded the case for the Court of Common Pleas to determine whether Pennsylvania law required the attempted murder and aggravated assault convictions to be merged for sentencing purposes and retained jurisdiction over the appeal.  See id.

After the Court of Common Pleas considered the issue, the Superior Court considered the three claims that Flemister asserted in his appeal: (1) that counsel was ineffective for failing to impeach Chambers and Dunbar with prior crimen falsi convictions; (2) that counsel was ineffective for failing to object to the Commonwealth's failure to prove an element of attempted murder; and (3) that counsel was ineffective for failing to impeach Hill regarding favorable treatment he received from the Commonwealth for his testimony.  See Commonwealth v. Flemister, 284 A.3d 945, No. 946 MDA 2021, 2022 WL 3652713, at *3 (Pa. Super. Ct. Aug. 25, 2022).  The court additionally noted that Flemister expanded on his third argument on appeal by arguing that the Commonwealth's failure to disclose evidence of Hill's cooperation constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963).

The Superior Court considered Flemister's claims on their merits and denied them on August 25, 2022.  See id. at *4–7.  The court nevertheless vacated the portion of Flemister's sentence arising from his conviction for aggravated assault, concluding that under Pennsylvania law aggravated assault is a lesser included offense in the crime of attempted murder and that the

4

two crimes accordingly merge for purposes of sentencing. See id. at *8. The court did not, however, remand for resentencing, because the trial court had ordered the sentences for aggravated assault and attempted murder to run concurrently, and the vacatur of the sentence for aggravated assault therefore did not alter the length of Flemister's sentence. See id. Flemister filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on February 28, 2023. See Commonwealth v. Flemister, 293 A.3d 561 (Pa. 2023).

Flemister filed the instant petition on September 23, 2023, and the Court received and docketed it on October 11, 2023. (Doc. No. 1.) Flemister asserts four claims for habeas corpus relief: (1) counsel was ineffective for failing to impeach Chambers and Dunbar with evidence of their crimen falsi convictions; (2) the Commonwealth failed to disclose Brady material to Flemister "regarding favorable treatment, deal, and/or understanding it had w[ith] its witness in exchange for their testimony" and that counsel failed to investigate this issue or confront the witness about it; (3) the Commonwealth used hearsay testimony instead of a medical report prepared by an expert to prove an element of the crime and counsel provided ineffective assistance by stipulating to the use of the hearsay evidence; and (4) the cumulative effect of counsel's errors constituted ineffective assistance of counsel. (Id.)

Flemister moved for leave to proceed in forma pauperis in connection with his petition. (Doc. No. 4.) The Court denied the motion on November 16, 2023, and ordered Flemister to pay the requisite filing fee within twenty-one (21) days, or no later than December 7, 2023. (Doc. No. 6.) Having not received the filing fee by that date, the Court dismissed the case without prejudice on December 11, 2023. (Doc. No. 7.) The Court then received payment of the filing fee on December 13, 2023. Because this payment appeared to have been timely mailed in accordance with the December 7, 2023, deadline, the Court issued an Order reopening the case

on December 20, 2023. (Doc. No. 8.) Respondents responded to the petition on January 30, 2024, arguing that Flemister's claims are procedurally defaulted and fail on their merits. (Doc. No. 14.)

After reviewing the petition and the response, the Court concluded that a complete state court record was necessary to review Flemister's claims for relief. The Court accordingly ordered Respondents to produce the state court record under Rule 7 of the Rules Governing Section 2254 Habeas Corpus Petitions. (Doc. No. 16.) Respondents produced supplemental exhibits on March 17, 2025. (Doc. No. 17.) The Court then received a letter from Flemister on May 16, 2025, indicating that he had not received Respondents' response to his petition. (Doc. No. 18.) The Court accordingly ordered Respondents to re-serve their response and granted Flemister an extension of time to file a reply brief after receiving the response. (Doc. No. 19.) Respondents subsequently re-served the response, and Flemister filed a reply brief in support of his petition on August 20, 2025, making the petition ripe for review. On September 10, 2025, the Court issued an additional Order requiring Respondents to produce a transcript of Flemister's PCRA hearing because the transcript was not included in the supplemental exhibits that Respondents initially filed. (Doc. No. 24.) Respondents produced the transcript as ordered on September 11, 2025. (Doc. No. 25.)

## II.   LEGAL STANDARDS

### A.   Substantive Standard

Habeas corpus is an "extraordinary remedy" reserved for defendants who were "grievously wronged" by criminal proceedings. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). The exercise of restraint by a federal court in reviewing and granting habeas corpus relief is appropriate due to considerations of comity and federalism. See Engle v. Isaac, 456 U.S.

107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." Id. States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." See 28 U.S.C. § 2254(a). If a claim presented in a Section 2254 petition has been adjudicated on the merits in state court proceedings, the Anti-Terrorism and Effective Death Penalty of 1996 ("AEDPA") sets stringent limits on a federal court's ability to issue a writ of habeas corpus. Specifically, AEDPA states, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet." See Mays v. Hines, 592 U.S. 385, 391 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2021)). Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction

through appeal." See Harrington, 562 U.S. at 102–03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions," see Dunn v. Reeves, 594 U.S. 731, 732 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fair minded disagreement," see Mays, 592 U.S. at 391 (quoting Harrington, 562 U.S. at 102).

### B. Exhaustion and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under Section 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law to raise, by any available procedure, the question presented. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A claim is exhausted when it has been "fairly presented" to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The petition must present the claim "in a manner that puts [the respondents] on notice that a federal claim is being asserted." See Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." Collins v. Sec'y of Pa. Dep't of Corrs., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. See 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal

litigation." See Duncan v. Walker, 533 U.S. 167, 180 (2001).  Prisoners seeking to challenge state court rulings issued by the Commonwealth of Pennsylvania may exhaust their claims by presenting them to the Pennsylvania Superior Court and are not required to advance the claims before the Pennsylvania Supreme Court.  See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  When a claim has not been exhausted in state court and state procedural rules bar the petitioner from any further attempts to exhaust the claim, it is procedurally defaulted.  See Shinn v. Ramirez, 596 U.S. 366, 371 (2022). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  See Coleman v. Thompson, 501 U.S. 722, 732 (1991).  In Cone v. Bell, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.  In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases.  When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

See id. at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" See Levya v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007)). The requirements of independence and adequacy are distinct. See id. A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if "it was firmly established, readily ascertainable, and regularly followed at the time of the purported default." See Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." See Coleman, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

10

rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Schlup v. Delo, 513 U.S. 298, 326 (1995).  Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice.  See id.  In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the Third Circuit explained the applicable two-step inquiry as follows: first, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  See id. at 225 (quoting Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can establish cause and prejudice or a fundamental miscarriage of justice, the Court excuses his default and reviews the merits of the claim presented.

        **C.**     **Standard for Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness."  See id. at 668; see also Williams v. Taylor, 529 U.S. 362, 390–91 (2000).

Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficient performance prong and the prejudice prong. See id. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).

When considering an ineffective assistance of counsel claim, the Court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate. See Dunn, 594 U.S. at 739. The Court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate. See id.; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)). The Court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision." See id. at 2411 (emphasis in original) (quoting Harrington, 562 U.S. at 101).

### D. Standard for Sufficiency of Evidence Claims

Federal habeas courts considering sufficiency of evidence claims must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Jackson, 443 U.S. at 319 (emphasis in original). The Court must look to state law to determine the substantive elements of the offense. See Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting

Jackson, 443 U.S. at 324 n.16). When the claim has been decided on its merits in state court, the federal court must be doubly deferential: the jury's verdict may only be set aside if no rational finder of fact could have reached the same verdict and the state court decision upholding the jury verdict may only be disturbed if it is objectively unreasonable. See Lambert v. Warden Greene SCI, 861 F.3d 459, 467 (3d Cir. 2017) (citing Coleman, 566 U.S. at 650).

### III. DISCUSSION

#### A. Exhaustion and Procedural Default

The Court will first consider the issues of exhaustion and procedural default because Respondents contend that Flemister procedurally defaulted all claims except for his first ineffective assistance of counsel claim. (Doc. No. 14.)

The Court disagrees with Respondents in all respects except with regard to Flemister's claim of cumulative error by counsel. The record of Flemister's state court proceedings shows that he asserted his Brady claim before the Superior Court on appeal from the denial of his PCRA petition. See Flemister, 2022 WL 3652713, at *7. Although the Superior Court noted that this was the first time Flemister had asserted the issue in state court, the court ultimately considered and denied the claim on its merits. See id. Flemister also properly asserted his related ineffective assistance of counsel argument during PCRA proceedings. See id.

Flemister asserted his argument that the Commonwealth failed to prove an element of the charged offense on direct appeal from his conviction. See 2016 WL 5920672, at *3. Flemister additionally argued that counsel was ineffective for failing to argue this point in his PCRA appeal. See Flemister, 2022 WL 3652713, at *4.

Flemister's claim of cumulative error by trial counsel, however, is procedurally defaulted. A claim of cumulative error by trial counsel is a separate and independent claim of ineffective

13

assistance of counsel that must be exhausted in state court separately from a petitioner's other ineffective assistance of counsel claims.  See Collins, 742 F.3d at 541.  Here, it is clear from the state court record that Flemister failed to assert his claim of cumulative error by trial counsel in state court.  Hence, this claim is procedurally defaulted, and the Court will not consider it on its merits.[1]

### B. Merits

As noted above, the Court's analysis proceeds to the merits as to all claims other than Flemister's claim of cumulative error by trial counsel.  Flemister first contends that his trial counsel was ineffective by failing to impeach Chambers and Dunbar with their past crimen falsi convictions.  (Doc. 1 at 5).  The Superior Court denied this claim on its merits, noting that counsel made the strategic decision not to attack Dunbar's credibility because "the basis of [Flemister's] defense strategy was on Dunbar's inability to identify [him] as the shooter," and that Chambers did not have past convictions that qualified as crimen falsi  See Flemister, 2022 WL 3652713, at 4.

The Superior Court's conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law.  Further it is not nor an unreasonable determination of the facts in light of the evidence presented.  This Court must grant heavy deference to counsel's strategic decision not to impeach Dunbar any can only grant habeas relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision."  See Dunn, 594 U.S. at 739 (emphasis in original) (quoting Harrington, 562 U.S. at 101).  Flemister's claim for relief plainly fails to clear this hurdle—counsel clearly had a reasonable strategic basis

---

[1] Flemister concedes that this claim is procedurally defaulted in his reply brief.  (Doc. No. 23 at 7).

14

for not impeaching Dunbar's credibility. See Doc. No. 25 at 25, 29 (providing testimony from counsel that her trial strategy was to get Dunbar to testify that he could not identify Flemister as the shooter)). As for counsel's failure to impeach Chambers, the Superior Court concluded that there was no meritorious basis on which he could be impeached, and trial counsel cannot be faulted for failing to advance a meritless argument. See Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Flemister next argues that the Commonwealth committed a Brady violation by failing to disclose evidence of its "favorable treatment, deal, and/or understanding it had" with Hill and that counsel was ineffective for failing to investigate evidence related to this claim or confront Hill about the motives for his testimony. The Superior Court denied the Brady claim on its merits, concluding that it was simply a "bald accusation that the Commonwealth dismissed charges against a witness who testified against [Flemister] at trial" that was not supported by "anything beyond mere speculation." See Flemister, 2022 WL 3652713, at *7. The court concluded that Flemister had not sufficiently developed the claim to allow the case to be remanded for an evidentiary hearing and accordingly denied it on its merits. Id.[2]

The Superior Court's conclusion regarding the related ineffectiveness claim is similarly reasonable. Flemister argues that counsel "failed to investigate and confront" Hill about his cooperation. (Doc. 1 at 6.) The Superior Court denied this claim, concluding that trial counsel

---

[2] An evidentiary hearing on this claim was not conducted during the PCRA proceedings because, as noted above, Flemister failed to assert this claim in his PCRA petition and raised it for the first time on appeal to the Superior Court. See Flemister, 2022 WL 3652713, at *7. Flemister has again requested an evidentiary hearing on this claim in this case. (Doc. No. 23 at 5.) This Court, however, may not conduct an evidentiary hearing when a habeas petitioner has "failed to develop the factual basis of a claim in State court proceedings." See 28 U.S.C. § 2254(e)(2). Flemister's failure to raise this claim in his PCRA petition constitutes a failure to develop the factual record of the claim. Accordingly, because federal law precludes this Court from conducting an evidentiary hearing, the Court will deny the request for a hearing.

thoroughly cross-examined Hill regarding his cooperation and motivation for testifying. See Flemister, 2022 WL 3652713, at *7. This conclusion is neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, the Court will deny this habeas claim.

Finally, Flemister's third argument asserts that the Commonwealth failed to meet its burden to establish the elements of attempted murder, and that counsel was ineffective for failing to hold the state to its burden of proof. (Doc. 1 at 8.) The Superior Court summarized the proof required to convict a defendant of attempted murder under Pennsylvania law as follows:

> The Crimes Code provides:
>
> > **(a) Definition of attempt.–**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.
>
> 18 Pa.C.S. § 901. "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." Commonwealth v. Jackson, 955 A.2d 441, 444 (Pa.Super.2008) (internal citations and quotations omitted). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." Id. "[A]ttempted murder requires an intent to bring about that result described by the crime of murder (i.e., the death of another)." Commonwealth v. Geathers, 847 A.2d 730, 734 (Pa.Super.2004). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely by circumstantial evidence." Jackson, 995 A.2d at 444. "The law permits the fact finder to infer that one intends the natural and probable consequences of his acts." Id. "The offense of attempt to kill is completed by the discharging of a firearm at a person with the intent to kill, despite the fortuitous circumstances that no injury is suffered." Commonwealth v. Mapp, 335 A.2d 779, 781 (Pa.Super.1975) (necessary intent found for attempted murder where defendant shot at victim and missed). Additionally, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill" required for a first-degree murder conviction. See Commonwealth v. Rega, 933 A.2d 997, 1009 (Pa.2007); Commonwealth v. Cousar, 928 A.2d 1025, 1034 (Pa.2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of a victim's body."). Further, evidence of flight is admissible for the purpose of establishing guilty knowledge.

16

>Commonwealth v. Gooding, 649 A.2d 722, 726 (Pa.Super.1994) (citing Commonwealth v. Jones, 319 A.2d 142, 149 (Pa.1974)).

See Flemister, 2016 WL 5920672, at *4.

Applying this standard, the Superior Court concluded that the Commonwealth established all the elements of attempted murder because "viewing all of the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to find that Appellant used an unlicensed handgun to inflict injury on a vital part of the victim's body." See id. Having reached this conclusion on direct appeal, the Superior Court held during Flemister's PCRA appeal that the ineffective assistance of counsel claim regarding the sufficiency of evidence failed because any argument counsel could have made on this issue would have been meritless. See Flemister, 2022 WL 3652713, at *5.

In light of the substantial deference this Court owes to the Superior Court's conclusions as to sufficiency of evidence and ineffective assistance of counsel claims, Flemister's habeas corpus claims clearly fail. There was plainly sufficient evidence at trial to sustain the Commonwealth's burden to prove attempted murder, and any ineffective assistance of counsel claim that counsel failed to hold the Commonwealth to this burden is therefore meritless.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny the petition for writ of habeas corpus with prejudice. A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve

encouragement to proceed further.  See Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).  An appropriate Order follows.


                                                      s/ Yvette Kane
                                                      Yvette Kane, District Judge
                                                      United States District Court
                                                      Middle District of Pennsylvania